# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Alvin Lee Gregory,**
**Plaintiff below, Petitioner**

**FILED**

February 11, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 11-1654** (Kanawha County 03-C-1993)

**West Virginia Division of Corrections and the**
**West Virginia Parole Board**
**Defendants below, Respondents**

### MEMORANDUM DECISION

Petitioner Gregory's appeal, filed *pro se*, arises from the Circuit Court of Kanawha County, wherein his petition for writ of habeas corpus was denied by order entered on January 31, 2005. The Circuit Court of Kanawha County subsequently entered an order on October 28, 2011, which denied various motions filed by petitioner.[1] Respondents West Virginia Division of Corrections and West Virginia Parole Board, by counsel John H. Boothroyd, filed a response in support of the circuit court's decision.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1975, petitioner was sentenced to life in prison with mercy following his guilty plea to first degree murder. In May of 1990, petitioner was released following his grant of parole. That November, petitioner was arrested for breaking and entering, of which he failed to notify his parole officer. Petitioner's parole was revoked in 1991 and he returned to prison. He was later convicted by jury of the breaking and entering charge. Following petitioner's return to prison, he had various write-ups, such as for assault, battery, and contraband. He refused to comply with pre-parole hearing reports and was repeatedly denied parole. Petitioner filed a petition for writ of habeas corpus in 2004 and the circuit court held an evidentiary omnibus hearing on this petition. In 2005, the circuit court entered its order that denied petitioner's petition for writ of habeas corpus. Petitioner subsequently filed various motions in circuit court, all of which the circuit court denied and in doing so, referenced its prior order of 2005 that denied petitioner habeas relief. Petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

---

[1] Namely, these motions were for a new trial, to vacate judgment, to reopen the case and for leave to file amended petition for writ of habeas corpus ad subjiciendum, for hearing or for judgment, and a separate motion for judgment.

1

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

We also bear in mind the following:

A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.

Syl. Pt. 4, *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

On appeal, petitioner raises five assignments of error, four of which were initially raised in circuit court and addressed by the circuit court in its 2005 order. Petitioner's first assignment of error on appeal argues that the circuit court erred when it failed to find West Virginia Code of State Rule 90-2 (1989) as null, void, and unenforceable as a matter of law. This issue is not reviewable on appeal, however, because it was not raised below and does not satisfy any of the permissible grounds as discussed in Syllabus Point 4 of *Losh v. McKenzie*.[2] Having reviewed the circuit court's "Order" entered on October 28, 2011, which references its "Final Order" entered on January 31, 2005, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal.[3] The Clerk is directed to attach a copy of the circuit court's orders to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's decision denying habeas corpus relief.

Affirmed.

---

[2] Petitioner's first footnote in his appellate brief incorrectly states that this Court granted review of his first assignment of error. However, the dated order he referenced concerned a separate matter.

[3] Aside from petitioner's first assignment of error referenced in the preceding footnote, petitioner also argues that West Virginia Code of State Rule 90-2 (1989) violates ex post factor law, the revocation of his parole for an indeterminate period violates proportionality principles, the Parole Board violated its own rules in the revocation of his parole period, and the disciplinary violations that were filed against him were void.

**ISSUED:**  February 11, 2013


**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

ALVIN LEE GREGORY,

    Plaintiff,

v.

                                  Civil Action No. 03-C-1993
                                  Judge Tod J. Kaufman

WEST VIRGINIA DIVISION OF CORRECTIONS,
and WEST VIRGINIA PAROLE BOARD,

    Defendants.

## ORDER

On August 18, 2003, Alvin Gregory filed a Complaint against the West Virginia Secretary of State, the West Virginia Division of Corrections, and the West Virginia Parole Board. Pursuant to the leave of this Court, Gregory converted his complaint for civil damages into a petition for habeas corpus relief and on March 25, 2004, an Amended Petition for Writ of Habeas Corpus Ad Subjiciendum was filed. On June 14, 2004, this Court held an evidentiary hearing in this matter and by Order dated January 31, 2005, this Court denied the Petition for Writ of Habeas Corpus.

On February 18, 2005, Plaintiff filed Petitioner's Objection and Motion for a New Trial. On December 12, 2005, Plaintiff filed Petitioner's Motion to Vacate Judgement and on December 27, 2005, filed an Amended Petitioner's Motion to Vacate Judgment. On January 5, 2006, Plaintiff filed Petitioner's Motion to Reopen Case and for Leave to File Amended Petition for Writ of Habeas Corpus Ad Subjiciendum. On July 19, 2006, Plaintiff filed a Motion for Hearing or Motion for Judgment. Plaintiff's last motion addressed to this Court was filed on May 19, 2009, in the form of a Motion for Judgment.

1

After careful review of each motion filed by the Plaintiff, this Court hereby denies each motion. This Court had a hearing on Mr. Gregory's current cause of action. This Court issued a very detailed order explaining both the law and facts of the case. Upon review of each motion filed by the Plaintiff, this Court finds the merits have already been addressed in the prior order of this Court and thus, have already been decided and dismissed. Accordingly, the Court hereby DENIES Plaintiff's Objection and Motion for a New Trial, Motion to Vacate Judgement, Amended Petitioner's Motion to Vacate Judgment, Motion to Reopen Case and for Leave to File Amended Petition for Writ of Habeas Corpus Ad Subjiciendum, Motion for Hearing or Motion for Judgment, and Motion for Judgment. This case is hereby DISMISSED and STRICKEN from the docket of the Circuit Court.

The Circuit Clerk shall send a certified copy of this order to all counsel of record:

John H. Boothroyd
Assistant Attorney General
112 California Ave
Charleston, West Virginia 25305

Alvin L. Gregory
DOC #10086
1 Mountainside Way, Box 5
Mt. Olive, West Virginia 25185

ENTERED this 20 day of October, 2011.

Tod J. Kaufman, Judge

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**ALVIN LEE GREGORY,**

      Plaintiff,

v.

      Civil Action No. 03-C-1993
      Judge Tod J. Kaufman

**WEST VIRGINIA DIVISION OF CORRECTIONS,**
**and WEST VIRGINIA PAROLE BOARD,**

      Defendants.

## FINAL ORDER

On August 18, 2003, Alvin Gregory filed a Complaint against the West Virginia Secretary of State,[1] the West Virginia Division of Corrections, and the West Virginia Parole Board. Pursuant to the leave of this Court, Gregory converted his complaint for civil damages into a petition for habeas corpus relief and on March 25, 2004, an Amended Petition for Writ of Habeas Corpus Ad Subjiciendum was filed. On June 14, 2004, this Court held an evidentiary hearing in this matter. Additionally, the parties have submitted documentary evidence at various points during the litigation. Upon the parties having the opportunity to submit proposed finding of facts, conclusions of law and decision by July 14, 2004, this matter is mature for decision. The Court, hereby, makes following finding of facts, conclusions of law and decision:

1.     Alvin Gregory has been informed in open court that any and all claims regarding his parole revocation in 1991, parole proceedings up to and including his last parole release interview in 2003, and prison disciplinary proceedings up to March 25, 20

---

[1] On December 9, 2003, the West Virginia Secretary of State was dismissed as a defendant.

1

04, must be raised in the present habeas corpus proceedings and that any future habeas corpus claims regarding the above actions by the Parole Board and the Division of Corrections would be deemed waived pursuant to Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981) and West Virginia Code § 53-4A-1 et seq..

2. Gregory has been informed that he has the right to counsel in the present habeas corpus proceedings and that, if he cannot afford counsel, counsel will be provided to him. Gregory declined to have counsel appointed to his case and has made a knowing and voluntary waiver of counsel for these habeas corpus proceedings.

3. Gregory has had the opportunity to present any and all documentary evidence, testimony and legal argument in support of his claims for habeas corpus relief. He has had a full and fair hearing.

4. Gregory has previously filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County, Gregory v. Trent, Case No. 97-MISC-223, challenging his February 13, 1991 Order revoking his parole. The petition was denied on the merits by this Court on May 24, 1999, and has not been overturned by the West Virginia Supreme Court or any Federal Court. This Court, at that time, reviewed the Parole Board records, the Petition and relevant statutory and case law. In the present action, Gregory has not provided the Court any new factual information outside of the same Parole Board records. This Court finds that Gregory had full and fair hearing on the merits on that petition.

5. Gregory has previously filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County, Gregory v. Commissioner, West Virginia Division of Corrections, Civil Action No. 97-Misc-401, challenging all prison disciplinary proceedings against him. The petition was

2

denied on the merits by Judge James Stucky on August 10, 1999, and has not been overturned by the West Virginia Supreme Court or any Federal Court.

6. In July of 1975, Gregory shot Carlton Boiarsky in the head during an armed robbery. On December 5, 1975, Gregory pled guilty to First Degree Murder and was subsequently sentenced to life with mercy.

7. From the date of his intake at Huttonsville Correctional Center on April 7, 1976 to December 6, 1988, Gregory was found in violation of prison disciplinary rules 44 times. These violations were for Insubordination (10 times), Refusing an Order (19 times), Disobeying an Order (1 time), Failure to Comply with an Order (1 time), Disrespect (2 times), Tampering with Locks (2 times), Contraband (2 times), Destruction/Marring of State Property (2 times), Assault (1 time), Fighting (1 time), Hostage Taking (1 time), Riot (1 time) and Threats (1 time).

8. On May 23, 1990, the Parole Board granted Gregory release on parole "in accordance with the laws of West Virginia as to parole and subject to the rules and regulations prescribed by the Commissioner, Department of Corrections regarding release from the institution, and subject to the rules and regulations governing parole supervision made in pursuance thereof."

9. Kylene Brown was one of the Parole Board members who voted to grant parole release to Gregory. According to Brown, all Parole Board decisions were based on the assumption that a parolee would be held to follow the rules and regulations of parole supervision and that in the absence of such parole supervision, she would have been less likely, if at all, to grant parole to inmates, including Gregory.

10. Among the rules and regulations governing parole supervision prescribed by the Division of Corrections pursuant to 90 C.S.R. 2.1, were:

3

c. You are to notify your parole officer of any change of residence or employment within 72 hours.

e. You are required to maintain behavior that does not threaten the safety of yourself or others or that could result in imprisonment.

g. You must report within 72 hours to your parole officer each time you are arrested or questioned by officers of any law enforcement agency.

h. Between the first and tenth of each month you must make a complete and truthful written report to your parole officer of your previous month's activities on forms provided and report in person as directed by your parole officer.

11. On March 24, 1990, pursuant to his parole release, Gregory entered into the following parole agreement: Not violate any criminal laws of this or any state, or of the United States and Comply with and abide by all the rules and regulations prescribed by the Commissioner, Department of Corrections or an authorized agent. It is understood by me that the violation of any of the terms and conditions of this agreement for my release on parole or any rules and regulations made for my supervision while on parole, shall subject me to being returned to the institution form which I was paroled to serve the maximum of my term, except when otherwise ordered. I do hereby declare that the conditions of release and the rules for my supervision, have been explained to me and I fully understand the rules and conditions. I shall faithfully obey and abide by the same and report as directed.

12. The rules and regulations regarding parole supervision, including the Parole Board's rules and regulations dating back to 1959, have required that a parolee make a monthly report to his parole officer, report to his parole officer any time he is arrested or questioned by officer of any law enforcement agency, report and get the approval of his parole officer for any change of residence, and obey all criminal laws.

4

13. Gregory reported to his parole officer in Beckley, West Virginia, on May 24, 1990. According to his Parole Officer, Sue Farley, problems with Gregory began almost immediately. On June 3, Gregory quit his job at the Ponderosa Steak House and did not find any other employment while on parole. On July 5, 1990, Gregory left a message for Farley that "as of July 1, my address is anywhere I lay my head." On July 6, 1990, Gregory left a message that he would be staying at a new address (319 Rural Acres Drive, Beckley). On September 20, Gregory was arrested for felony Transferring Stolen Property. In October, Gregory indicated he needed to discuss his living arrangements but did not show for a scheduled meeting with Farley. In fact, Gregory's last report to the parole office was on October 5. On November 7, Gregory was arrested on a charge of felony Breaking and Entering. Gregory posted bond the next day and did not inform Farley of the charges. Farley eventually found out by reading a newspaper. On November 14, 1990, Farley spoke with the arresting officer and learned that Gregory reeked of marijuana at the time of arrest and that Gregory (apparently for some time) was living at 315 Hedrick Street in Beckley.

14. Gregory was eventually convicted of the above charge of felony Breaking and Entering by a Raleigh County jury on March 20, 1991 (State of West Virginia v. Alvin Lee Gregory, Case No. 91-F-728).

15. On November 20, 1990, Farley requested an arrest warrant for the following parole violations:

Charge #1: You did violate Rule #C of the Rules and Regulations governing your release on parole in that you failed to notify your parole officer of a change of residence from 319 Rural Acres Drive, Apt. #9, Beckley, WV to 317 Hedrick Street, Lot #17, Beckley, WV, within 72 hours.

Charge #2: You did violate Rule #G of the Rules and Regulations governing your release on parole in that you failed to report your November 7, 1990 arrest within 72 hours.

5

7

Charge #3: You did violated Rule #H of the Rules and Regulations governing your release on parole in that you failed to submit a written monthly report for the month of October 1990.

A warrant for Gregory's arrest was subsequently issued by the Commissioner of Corrections on November 28, 1990.

16. Gregory was arrested pursuant to the arrest warrant/hold request on November 28, 1990.

17. On December 19, 1990, a preliminary hearing on Gregory's parole violation charges was held in front of hearing examiner Paula Gardner. Gardner inquired as to whether he had received notice and Gregory acknowledged that he had. Gardner also inquired as to whether he wanted counsel, but Gregory declined counsel.

18. At the preliminary hearing, Farley and Sergeant Everett Fink of the Beckley Police Department testified in support of the parole violation charges. Gregory did not call any witnesses, but did cross-examine both Farley and Sergeant Fink. Neither party introduced documentary evidence in addition to the live testimony. Based on the evidence, Gardner found that probable cause existed on all three parole violation charges.

19. On January 2, 1991, Robert Bailey, Jr., Chairman, Board of Probation and Parole, received from Raymond Swach, Chief of Parole Services, two memoranda which referred and recommended that the Parole Board hold a final revocation hearing on Gregory. The second memorandum listed as attachments, the parole violation charges filed by Farley, the transcript of the preliminary hearing, and Gardner's summary and recommendation.

20. The attached preliminary hearing transcript was transcribed on December 20, 1990 by Betty Lovelace, secretary, Southern Regional Parole Office. The attached summary and

6

recommendation from the preliminary hearing (which states probable cause was found for all three charges and recommends that the charges be forwarded to the Parole Board) was signed by Gardner on December 19, 1990, and Gardner's attestation to the accuracy of the transcript was signed on December 21, 1990. As noted by Gregory, the memorandum to Raymond J. Swach from Gardner attaching this information is dated "Decenber [sic] 19, 1990." Gregory submits that these attachments were never part of any written report received by the Parole Board on January 2, 1991. However, Gardner's memorandum has on it a hand-written date "12/26/90" and initials "RJS" and Swach's memorandum specifically mentions the transcript et al. was attached. There is no evidence to suggest that the date "Decenber 19, 1990" means anything more than Gardner prepared the memorandum ahead of time or misdated it. This Court finds that the Parole Board received the preliminary hearing transcript and Gardner's written attestation as to the accuracy of the transcript on January 2, 1991.

21. The attachments to Swach's memoranda also included the parole violation charges. Parole Violation Charge Number 1 reads:

> [y]ou did violate Rule C of the rules and regulations governing your release on parole in that you failed to notify your Parole Officer of a change of residence from 319 Rural Acres Drive, Apartment #9, Beckley, West Virginia to 317 Hedrick Street, Lot #17, Beckley, West Virginia within 72 hours.

While this charge in and of itself does not state a date, the transcript which is attached to Swach's memoranda includes transcript testimony of Sergeant Fink who states regarding Parole Violation Charge Number 1:

> ...On or about the first of November I was investigating some B & E's that occurred in the area and I went to Mr. Gregory's residence at Apartment #9, there at Rural Acres Drive. The apartment was empty. It had been vacated and I asked the neighbor where Mr. Gregory was at and he state the Mr. Gregory had left several days prior to my arrival there and I asked the

7

neighbor where Mr. Gregory had moved to and he stated no that he did not. Later on I determined that Mr. Gregory, approximately a week later, I determined that Mr. Gregory had moved to trailer #17 on Hedrick Street.

Parole Violation Charge Number 2 reads:

[y]ou did violate Rule G of the West Virginia Rules and Regulations governing your release on parole in that you failed to report your November 7, 1990 arrest within 72 hours.

Parole Violation Charge Number 3 reads:

[y]ou did violate Rule H of the West Virginia Rules and Regulations governing your release on parole in that you failed to submit a written monthly report for the month of October 1990.

Rule H requires that the report for the month of October shall be made between the 1st and 10th of the next month, November, 1990.

22. Swach's memoranda and attachments do not include any documents from the preliminary hearing. However, no documents were introduced at the preliminary hearing and, thus, there were no documents to attach.

23. Swach's memoranda and attachments do not state when Gregory was arrested on the charges or had a hold placed on him. They do state that the "[s]ubject has not been released on bond and is currently being held in Raleigh County jail" as well as a note that Gregory "has pending charges in Raleigh County, WV."

24. Swach's memoranda and attachments do not state when Gregory received notice of the parole violation charges. There is no evidence that Gregory received written notice of the parole violation charges before his arrest on November 28, 1990.

25. According to Diann Skiles, an office assistant at the time of Gregory's parole revocation proceedings and, since 1998, a Program Specialist for Interstate Compact and Records at the Division of Corrections, the arrest or hold papers for Gregory and the notification of parole

8

violation charges should be in Gregory's inmate file, but are not. According to Skiles, the fact that these documents are not presently in the file, does not mean that these documents do not exist or that they were never received by the parole board.

26. According Brown, one of the Parole Board members who voted to hold a final revocation hearing on Gregory, and Skiles, the Parole Board would have insisted on having the parolee's arrest or hold papers and the notification to the parolee of the parole violation of charges before continuing with further parole revocation proceedings. At a minimum, the Parole Board would have found out this information by asking Swach or Parole Services, who were located in the same central office.

27. According to Brown and Skiles, the date when the parolee was arrested or held on the parole violation charges is needed to (1) determine that the "written report" under the Parole Board's Administrative Rules was not received later than the thirty-fifth day after the parolee was arrested or held on the charges, and (2) determine the parolee's time spent in jail so that the inmate receives "good time" credit for this time towards his underlying sentence. In the event parole is revoked, the arrest/hold date is also needed so that the Parole Board will correctly schedule the next parole review.

28. According to Brown and Skiles, the date the parolee first received notice of the parole violation charges is needed to determine that the "written report" under the Parole Board's Administrative Rules was not received later than the thirty-fifth day after the parolee was first served with notice.

29. Upon receipt of the memoranda and attachments from Swach, the Parole Board voted to hold a final revocation hearing.

9

11

30.    A final revocation hearing was held on January 14, 1991. At the hearing, parole officer Farley and Sergeant Fink again testified. Farley testified, in part, that she had not received Gregory's monthly report for the month of October 1990 as was required, that Gregory had not reported his November 7, 1990 arrest to her within 72 hours as was required, and that Gregory did not report his change of address to her within 72 hours as was required. Sergeant Fink testified, in part, that he had tried to locate Gregory at the old address of 319 Rural Acres Drive on or about November 1, 1990 and found this apartment to have been vacated.

31.    At the final revocation hearing, Gregory did not call any witnesses on his behalf or introduce any documentary evidence. Nor did Gregory attempt to do either. Gregory's defense, then and now, was that the parole revocation charges could not and were not proven.

32.    The Parole Board found Gregory guilty on all three parole violation charges and entered an Order revoking Gregory's parole on February 13, 1991. The revocation order stated that Gregory be "reconfined until he is otherwise released according to law." The revocation order further stated that Gregory would again be eligible for parole in November of 1991, within one year after Gregory was first detained on the parole violation charges.

33.    In November of 1991, Gregory refused to see the Parole Board for his parole release hearing. Gregory also had declined to be interviewed for his pre-parole report. The pre-parole report includes important information such as the inmate's home plan. Because Gregory did not waive his hearing, the Parole Board scheduled his next parole release hearing for January 1992, the earliest date possible under West Virginia Code § 62-12-23(c), which requires the Parole Board to give the victims in first degree murder cases notice of the parole release hearing, at least 45 days in advance.

34.    On January 7, 1992, Gregory again declined to be interviewed for his pre-parole report

10

and refused to see the Parole Board.

35.    On January 14, 1992, Gregory was placed in punitive segregation until October 14, 1992 due to rule violations of refusing drug/alcohol screening, creating a disturbance, refusing an order, and assault and/or battery. Due to other rule violations (twice refusing drug/alcohol screening, contempt of magistrate court, creating a disturbance, and refusing an order) Gregory continued to stay in punitive segregation until July 14, 1993. Under West Virginia Code, § 62-12-13(b)(2) an inmate in punitive segregation is not eligible for parole release. The inmate becomes eligible for parole in the first full month after the month in which the inmate is released from punitive segregation. 92 C.S.R. 1, § 4.02(a) (1983).

36.    A parole hearing for Gregory was scheduled for September of 1993. On August 26, 1993, Gregory received a write-up for the rule violation of fighting. West Virginia Code § 62-12-13(b)(3) requires an inmate maintain a record of good conduct in prison for a period of at lease three months immediately preceding any release on parole and "the inmate shall have his parole eligibility postponed until the fourth month after the month in which the rule violation occurred." 92 C.S.R. 1, § 4.02(a) (1983). Thereafter, Gregory was also written up for use/possession of drugs and/or intoxicants in September of 1993 and was placed in punitive segregation from November 10, 1993 to February 10, 1994. In January of 1994, Gregory also received write ups for threats and creating a disturbance, which pushed his parole eligibility back to May 1994.

37.    In May of 1994, Gregory refused to see the Parole Board. He did, however, interview for his pre-parole report. In this report, Gregory referred to the sentencing judge as a "cynical old fool who shouldn't be sitting on the bench," the prosecuting attorney as "he's a suck ass," the police as "all of them are punks, liars, and railroad artists," his crime (1st degree murder) as "it's bullshit."

11

13

Gregory's report also stated that "if granted parole he plans to reside with whoever he wants at anywhere."

38. Thereafter, Gregory refused to see the Parole Board for parole hearings scheduled in July, September, and November of 1994, and January and March of 1995. Before the March 1995 hearing, Gregory was informed by the Parole Board that if he refuse to appear for it, his next hearing would be set for March of 1996.

39. In January of 1996, Gregory provided advanced notice that he was not going to appear at his March 1996 hearing and a new hearing was set for January 1997.

40. In January 1997, Gregory again refused to see the Parole Board. Gregory also refused any further psychological testing.

41. In January 1998, Gregory again refused to see the Parole Board. Gregory also refused to be interviewed for the pre-parole report. At the time of the January 1998, Gregory was completing another stint in punitive segregation and was set to be eligible for parole in February 1998. Parole Board Rule 5.01(c) permits the Parole Board to advance the time of any interview, providing all other rules are complied with and, in Gregory's case, the rescheduling of the January parole hearing would have delayed the hearing until March. The Parole Board could have granted parole release to start when Gregory became eligible in February. The Parole Board, however, did not grant Gregory parole release. Pursuant to West Virginia Code, § 62-12-13(e), Gregory was given a three-year set up and was scheduled for parole review in January 2001.

42. Gregory next appeared in front of the Parole Board in January 2001. The Parole Board did not release Gregory on parole at this time. The Parole Board scheduled the next parole hearing for January 2002 and recommended among other things that Gregory stay write-up free.

12

43.     On June 4, 2001, Gregory received write-ups for Assault and/or Battery and Contraband and was ordered into punitive segregation until June 4, 2002. On January 30, 2002, Gregory was given early release from punitive segregation. On April 30, 2002, Gregory filed a grievance stating that, due to his early release from punitive segregation, he should have had a parole hearing in February of 2002. However, because of the 45-day notice requirement, the earliest a parole hearing could have been scheduled would have been March of 2002. In response to his grievance, Gregory was informed that a parole hearing was scheduled June 3, 2002.

44.     According the Procedural Rules of the Board of Parole, § 5.02 (Notice to Inmate)(2001), "[t]he Board shall notify inmates of the date of their individual interviews by issuing a list every month," which "shall be issued by the Board on or before the first day of the month prior thereto." In this case, the list had to be done before May 1, 2002 and evidently Gregory was not on the list. Gregory was asked to waive a "notice requirement" and when he refused to waive, his hearing was scheduled for July 2002.

45.     Gregory did appear for his July 2002 parole hearing, but the Parole Board did not release him on parole. The Parole Board again recommended that Gregory stay write-up free.

46.     In a letter to Henry Lowery, Records Supervisor, West Virginia Division of Corrections, dated August 2, 2002, Gregory stated that based on his July 2002 parole hearing "[i]t appears as though the WVDOC has disciplinary violations in my record in excess of the number of disciplinary violations obtained by me from the MOCC [Mt. Olive Correctional Complex] Records Clerk." Pursuant to this letter, Lowery sent Gregory a copy of his disciplinary history in the Division of Corrections' file and noted that an entry on June 13, 2001 reflected the Warden's approval of the loss of Earned Good Time Credit for the June 4th Assault and Battery. Lowery also noted that there

13

were a few discrepancies between the Mt. Olive and Central Office records, which were corrected.

47. In August, September and October 2002, Gregory was written-up for creating a disturbance (twice) and fighting. Before his July 2003 parole hearing, Gregory refused to answer questions in his psychological evaluation in June 2003 and refused to answer questions for his pre-parole report. The Parole Board did not grant Gregory parole release and scheduled his next hearing for July of 2005.

48. Since Gregory's parole was revoked he has been found in violation of prison rules 39 times and has served over five years in punitive segregation.

49. The disciplinary rules are contained in the Division of Corrections' Policy Directive 325.00. By this Directive, the same rules and procedures are applied to all "adult" inmates housed in Correctional institutions. The disciplinary rules and procedures are the same for an inmate, whether he is housed at Huttonsville Correctional Center, St. Marys Correctional Center or Mt. Olive Correctional Complex. The only current exception is that there is a different Policy Directive for the Anthony Correctional Center, which is designed to house youthful offenders (who are 18 years old and above).

## CONCLUSIONS OF LAW

Petitioner presents several arguments in support of his Amended Petition For Writ of Habeas Corpus Ad Subjiciendum. First, petitioner alleges that West Virginia Code §§ 62-12-19 and 62-13-2 violate Article 2, Section 1 of the Constitution of West Virginia by delegating legislative authority

14

to the Parole Board and the Commissioner of Corrections without providing adequate standards to guide the Board and the Commissioner.

"The legislative power shall be vested in a senate and house of delegates." W.Va. Const. Article VI, Section 1.

"As a general rule the Legislature, in delegating discretionary power to an administrative agency, such as a board or a commission, must prescribe adequate standards expressed in the statute or inherent in its subject matter and such standards must be sufficient to guide such agency in the exercise of the power conferred upon it." Syl. Pt. 3, *Quesenberry v. Estep*, 95 S.E.2d 832 (W.Va. 1956). Additionally, the Supreme Court held:

> The general rule, which requires an express standard to guide the exercise of discretion and applies to legislation regulating ordinary lawful activity, is subject to the exception that when it is impracticable to formulate a definite comprehensive rule or when the legislation relates to the administration of a police regulation and is necessary to protect the public health, morals, safety, and general welfare of the community, it is not essential that a specific prescribed standard be expressly stated in the legislation.

Syl. Pt. 4, *Id.*

Petitioner's challenge to West Virginia Code § 62-12-19 rests with language found in subsection (b):

> When a parolee is under arrest for violation of the conditions of his or her parole, he or she shall be given a prompt and summary hearing, at which the parolee and his or her counsel shall be given an opportunity to attend. If at the hearing it shall appear to the satisfaction of

15

the board that the parolee has violated any condition of his or her release on parole, or any rules or conditions of his or her supervision, *the board may revoke his or her parole and may require him or her to serve in prison the remainder or any portion of his or her maximum sentence for which, at the time of his or her release, he or she was subject to imprisonment*

W.Va. Code § 62-12-19(b) (emphasis added). Petitioner attacks the emphasized language, arguing that it gives the Board complete authority without providing any standards as required under Syl. Pt. 3 of *Quesenberry*. He contends that the statute allows the Board to impose a penalty greater than the original sentence for technical violations of parole.

Similarly, petitioner contends that West Virginia Code § 62-13-2(b) provides no standards for the Commissioner to follow regarding supervision of parolees and no due process standards:

The commissioner of corrections shall supervise all persons released on parole and placed in the charge of a state parole officer and all persons released on parole under any law of this state...The commissioner shall prescribe rules for the supervision of...parolees under his or her supervision and control...

Syllabus Points 3 and 4 of *Quesenberry* must be read together. The Court concludes that Syllabus Point 4 is applicable in the instant case. The legislation at issue concerns both public safety and the general welfare of the community. As respondents have cited, "[t]he primary purpose of the Division of Corrections is to enhance public safety." W.Va. Code § 25-1-1a(a). Therefore, West Virginia Code §§ 62-12-19 and 62-13-2 do not violate Article VI, Section 1 of the Constitution of West Virginia.

16

Petitioner's second argument alleges that the rules and regulations governing his parole supervision violate the Ex Post Facto clause of the United States Constitution and the Constitution of West Virginia because they did not exist at the time his offense occurred in 1975. He argues that enforcing the rules and regulations against him has resulted in a significant increase in his punishment. Petitioner contends that since the rules and regulations didm not exist at the time of his crime,

The Ex Post Facto clause of the United State Constitution holds, "No State shall ...pass any...ex post facto Law..." U.S. Const. Art. I § 10, cl. 6.

Similarly, the Constitution of West Virginia provides that "[n]o...ex post facto law...shall be passed." W.Va. Const. Art. 3, § 4.

"To fall within the *ex post facto* prohibition, a law must be retrospective--that is, "it must apply to events occurring before its enactment"--and it "must disadvantage the offender affected by it," *id.*, at 29, 101 S.Ct., at 964, by altering the definition of criminal conduct or increasing the punishment for the crime, see *Collins v. Youngblood,* 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)." *Lynce v. Mathis,* 519 U.S. 433, 441 (1997).

" "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthened the sentence or operates to the detriment of the accused, cannot be applied to him." Syllabus Point 1, *Adkins v. Bordenkircher,* 164 W.Va. 292, 262 S.E.2d 885 (1980)."

First, petitioner must show that the law in question has retrospective application to him. Here, he alleges that the Board did not properly promulgate its parole supervision rules and regulations, 90 C.F.R. § 2-1.1 et seq., until 1989, approximately fourteen years after his crime occurred. The Board contends that it promulgated rules and regulations which were in effect prior to the commission of petitioner's crime, which were substantially the same as the rules and

17

regulations in effect at the time petitioner was released on parole. Moreover, the Board cites the 1975 versions of West Virginia Code §§ 62-12-17(3), 62-13-2(b), and 62-13-7 to argue that the Division of Corrections had authority to alter the terms and conditions of parole. *See. Conner v. Griffith,* 238 S.E.2d 529, 532 (W.Va. 1977) (Recognizing the restrictions promulgated by the Division of Corrections upon parolees, including those at issue here).

It is not clear from the record presented by the parties whether the Board did have properly promulgated rules at the time of petitioner's crime. However, the Court holds that the application of 90 C.F.R. § 2-1.1 et seq., to petitioner did not violate the Ex Post Facto Clauses of the United States and West Virginia Constitutions. Contrary to petitioner's arguments, the regulations did not disadvantage petitioner by increasing his punishment for his crime. The parole supervision regulations, which petitioner agreed to abide by, were terms of mercy which allowed him to be released on parole. The regulations themselves did not disadvantage petitioner, his violation of those regulations caused his parole revocation and reimprisonment. The cases cited by petitioner involved statutes that worked to disadvantage an inmate's parole eligibility by lengthening the time between parole consideration or reducing good time credit. *See Lynce,* 519 U.S. 433; *Garner v. Jones,* 529 U.S. 244 (2000); *California v. Morales,* 514 U.S. 499 (1995). Since petitioner's eligibility for parole was not at issue, but his compliance with parole supervision regulations, these case are distinguished.

Petitioner's third argument posits the Board did not have jurisdiction to revoke his parole because it failed to comply with its own regulations concerning parole revocation hearings. Specifically, petitioner contends that the report of the charges received by the Board did not contain all the information required by 92 C.S.R. § 1-11.1(a)(1) and that the report failed to have attached an attested copy of the preliminary hearing transcript in violation of 92 C.S.R. § 1-11.1(a)(2).

92 C.S.R. § 1-11.1 provides:

(a) The Board shall convene a revocation hearing only if it receives from the Department:

18

(1) A written report which recites specific charges of violation of conditions, the date of each alleged violation, the date on which the parolee was served with written notice of the charges, the date, if any, on which the parolee was placed in jail pursuant to the charge, the date, if any, the parolee qwas released from jail on bond, the date on which a preliminary revocation hearing was held by a Department hearing examiner, and whether for each charge the hearing examiner found probable cause.

(2) A transcript of a preliminary revocation hearing on the charges and a written attestation by the hearing examiner as to the accuracy of the transcript.

(3) Copies of any documents or writings admitted as exhibits at the preliminary revocation hearing.

(b) Notwithstanding the foregoing, the Board shall convene a revocation hearing only if it receives the aforementioned report and transcript no later than the thirty-fifth (35) day after either the date on which parolee received written notice of the charges or the date or which the parolee was incarcerated, whichever occurred sooner...

Petitioner contends that report failed to recite specific violations, but merely referred to specific rules and regulations; failed to state the dates the alleged violations occurred; failed to state the date petitioner received written notice of the charges, and; failed to state the date petitioner was incarcerated pursuant to the alleged violations.

After a review of the report, the Court holds that the report contained all the requisite information outlined in the regulation, with the exception that the date of petitioner's incarceration for the alleged violations is not indicated. However, this technical noncompliance is not a jurisdictional impediment to the Board's actions because petitioner was not prejudiced. Syl. Pt. 1, *In re Burks*, 525 S.E.2d 310 (W.Va. 1999). Moreover, contrary to petitioner's assertion of some

19

21

irregularity in the transcribing of the transcript and subsequent attachment to the report, the Court finds that a properly attached copy of the transcript was included with the report.

Petitioner also alleges that the Board failed to hold his revocation hearing within 35 days of his arrest violating 92 C.S.R. § 1-11.1(b). Petitioner's argument misinterprets Section 1-11.1(b), which merely states that a hearing will be convened only if the Board *receives* the report within 35 days. (Emphasis added). It does not require that the hearing be held within 35 days. 92 C.S.R. § 1-11.2(b) states that "[t]he revocation hearing shall in any event be held no later than thirty (30) days after the date upon which either the preliminary hearing is held or upon which a written waiver of the preliminary hearing is executed." The preliminary hearing was held on December 19, 1990, and the final hearing was held January 14, 1991, well within the 30 day limit imposed by 92 C.S.R. § 1-11.2(b). The Board properly complied with its regulations concerning the report and the scheduling of the revocation hearing, therefore, the Board properly invoked its jurisdiction to revoke petitioner's parole.

Fourth, petitioner argues that the Parole Board exceeded its legitimate authority when it revoked his parole for an indeterminate period. The Order revoking parole stated Gregory be "reconfined until her is otherwise released according to law." West Virginia Code § 62-12-19(e) states that the Parole Board "may require" an inmate to serve in prison the remainder or any portion of his maximum sentence ans is not mandatory. The Parole Board, thus, can revoke parole and leave the inmate's original sentence as is. The Parole Board acted lawfully when it left Gregory's sentence at life with mercy and scheduled his next parole hearing pursuant to West Virginia Code, § 62-12-13(e).

Petitioner's fifth argument asserts the Parole Board violated the Supreme Court's holding in *Conner v. Griffith*, 238 S.E.2d 529 (W.Va. 1977), by imposing additional punishment upon the petitioner. In *Conner*, the Court stated, "[t]he violation of the terms of parole cannot furnish grounds

20

for the imposition of additional punishment unless the act is criminal in nature. Where a crime has been committed on parole, the State is free to charge and try the parolee for the crime committed. In addition, it can revoke his parole under those rules which prohibit him from committing crimes while on parole." *Id.* at 534.

*Conner* is inapplicable here. Respondents did not impose any additional punishment upon petitioner when his parole was revoked. Although *Conner* held that time spent on parole prior to a parole revocation must be credited to the underlying sentence, that holding has no bearing on petitioner. *Id.* Since petitioner's underlying sentence is for a term of life, he is not entitled to receive good time credit. W.Va. Code § 28-5-27(d).

Sixth, petitioner argues the Parole Board violated its own rules and regulation when revoking his parole. Essentially, petitioner's argument is the same as his claim that the Parole lacked jurisdiction to revoke his parole. As the Court previously found that the Parole Board's was with proper jurisdiction to revoke petitioner's parole based upon the same argument, the Court DENIES petitioner's claim on this ground.

Seventh, petitioner argues that the Parole Board has failed to schedule parole hearings at times he was eligible, denied him hearing when he was eligible and relied on information not given to him prior to parole hearings. West Virginia Code, § 62-12-13(e) requires that the Parole Board "shall at least once a year reconsider and review the case of every inmate who was denied parole and is still eligible." Since 1997, the same code provision has provided an exception in that the Parole Board "may reconsider and review parole eligibility any time within three years following the denial of parole following the denial of parole of a person serving a life sentence." The Parole Board's Procedural Rules provide that the Parole Board shall, at a minimum, schedule an inmate who is denied parole for subsequent parole interviews at twelve month intervals. However, subsequent parole interviews for inmates serving a life sentence may be scheduled at up to 36 month intervals.

21

23

92 C.S.R. 5.1(b). Except for 1999, 2000 and 2004, in which the Parole Board had scheduled a three-year and two-year set up, Gregory has been scheduled for parole review, at a minimum, once a year.

Neither the West Virginia Code nor the Parole Board's Procedural Rules account for the situation in which the inmate, through rules violations, is not eligible for parole release at the time of his annual scheduled parole interview. The West Virginia Code does not mandate an interview where the inmate is ineligible, but neither does it prohibit an interview. The West Virginia Code does not state whether the inmate's ineligibility at the time of the hearing means the Parole Board does not have to give him a hearing for that year, but may schedule a new hearing within the next full year. While, the general rule or approach appears to be that a new hearing will be scheduled as soon as the inmate is again eligible, but there is no statute or Parole Board Procedural Rule that mandates that approach.

It is true that the Parole Board in January 1998 held Gregory's hearing the month before he was eligible and that Gregory refused to appear for the hearing. Neither the West Virginia Code nor the Parole Board's Procedural Rules, however, would have prevented the Parole Board from keeping the originally scheduled hearing in January and, should parole release been deemed appropriate, granting parole release effective in February when Gregory again became eligible. Due Process, moreover, does not prevent the Parole Board from reconsidering and reviewing an inmate's suitability for parole when the inmate refuses to attend the parole hearing. Due process requires notice of the hearing and "[e]ach inmate may personally appear before the parole board…." See Syl. Pt. 4, Tasker v. Mohn, 165 W.Va. 55, 267 S.E.2d 183 (1980). The inmate may appear, but an appearance is not required, and the Parole Board can lawfully act in the voluntary absence of Gregory.

Because Gregory was ineligible for his scheduled yearly parole hearing in January of 2002, the Parole Board was under no legal obligation to subsequently provide him with a parole hearing the

22

moment he again became eligible in March of 2002. Gregory's parole hearing in July 2002 was sufficient. Even assuming that the Parole Board was under a legal obligation to provide Gregory with a parole hearing in March of 2002, there has been no evidence of bad-faith on the part of the Parole Board in the delay of the parole hearing to July of 2002. At best, Gregory would have been entitled to a writ of mandamus for the Parole Board to hold a parole release hearing. Mr. Gregory should receive a parole hearing as soon as possible to rectify this violation.

Gregory also claims that he has not received the necessary documents under 92 C.S.R. 5.5. The Parole Board's Procedural Rules, here, do not mandate that an inmate receive a copy of all documents under 92 C.S.R. 5.5(a)(1)-(4) every time he has a parole hearing, only that he shall have received them at least 14 days in advance of the hearing. These documents shall be delivered by the employees of the institution, in Gregory's case, Mt. Olive Correctional Complex. Once an inmate has received copies of these documents, the Parole Board has fulfilled its Rules and does not have to make a new set of copies for each subsequent parole hearing. Gregory's pre-parole reports list his criminal record as consisting of two convictions; (1) for first degree murder in Kanawha County and (2) for Breaking and Entering in Raleigh County. Before each parole hearing, Gregory has been given the opportunity to inform the Parole Board whether the information contained in the pre-parole report is accurate. Gregory has not informed the Parole Board that this criminal record is inaccurate and, in fact, these two convictions are true. Gregory has not alleged any other criminal record or any specific document, other than the pre-parole report, under 92 C.S.R. 5.05(a)(1) was considered by the Parole Board at any of his hearings and, as such, this Court cannot find that he failed to receive these documents. In any case, assuming there has been a failure to provide these documents, such failure is nonprejudicial as the Parole Board has relied on an accurate criminal record.

The pre-parole report also lists Gregory's total write-ups received for his entire time incarcerated and for the last year. The Parole Board's Procedural Rules, 92 C.S.R. 5.05(a)(3), do

23

not specify that the inmate's record must be something more than the breakdown contained in the pre-parole report prepared by Mt. Olive Correctional Complex. As such, the pre-parole report satisfies the Parole Board's Rules. Moreover, Gregory again does not allege a specific document that the Parole Board considered, but did not give him a copy of. Tasker v. Mohn, Syl. Pt. 4, supra, holds that "[d]ue process requires that parole release interview processes include the following minimum standards: . . . (2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file)." The Parole Board is not required under due process to provide Gregory with all the information to be used in their determination, but only to provide access to it. Gregory has not provided any evidence that he made a request for this information, let alone that the Parole Board denied him access to it. And as shown by Lowery provision of Gregory with a copy of Gregory prison disciplinary records in the Division of Corrections' file, Gregory did, in fact, have access. Due Process has been complied with regarding the provision of records.

West Virginia Code, § 62-12-13(i), also does not require that the inmate receive copies of the information used by the Parole Board in its determination and does not require access to the information. Assuming that Gregory had never before August 2002 received a copy of his prison disciplinary record, Gregory has since had a parole hearing in which he had a copy of this information and is entitled to no further relief.

Petitioner's eighth argument is that the state committed extraordinary dereliction in regard to the petitioner's parole revocation. The doctrine of "extraordinary dereliction" is limited to those cases "where the State has persisted in longstanding violations of relator's constitutional rights." Woodring v. Whyte, 161 W.Va. 262, 277, 242 S.E.2d 238, 247 (1978). The state cannot ordinarily be charged with extraordinary dereliction in its practices until such practices have been judicially condemned as unconstitutional and it has been established that the state, after being given a

24

reasonable time to correct the practices, has utterly failed to do so. State ex rel. K. W. v. Werner, 161 W.Va. 192, 223, 242 S.E.2d 907, 923 (1978), Harrah v. Leverette, 165 W.Va. 665, 271 S.E.2d 322 (1980).

An inmate does not have an absolute right to appointed counsel should he file, let alone merely desire to file, a petition for writ of habeas corpus under West Virginia Code, § 53-4A-1 et seq.. See Syl. Pt. 1, State ex rel. Farmer v. Trent, 206 W.Va. 231, 523 S.E.2d 547 (1999). "Counsel appointed to represent a probationer at his probation revocation may file a petition for habeas corpus to protest a probation revocation if he believes review is warranted. The cost of filing a petition for habeas corpus will be paid by the State as an integral part of the representation for an indigent at the probation revocation hearing." Syl. Pt. 2, Sigman v. Whyte, 165 W.Va. 356, 268 S.E.2d 603 (1980).

The Parole Board offered to provide Gregory with appointed counsel before the preliminary and final revocation hearings. Gregory declined counsel both times, and the obligation of the Parole Board to inform Gregory of his right to counsel ended at the final revocation proceeding. Sigman v. Whyte does not hold anything more than counsel can continue to represent the inmate through a habeas corpus challenge. The Parole Board cannot be "extraordinarily derelict" where there is no judicial determination that the Parole Board must inform an inmate after his parole has been revoked of his "right to counsel" should he seek to challenge the revocation in habeas corpus proceedings. Moreover, Gregory declined counsel in these proceedings and in the current habeas corpus proceedings, thus, assuming Gregory should have been informed about a right to counsel for a habeas corpus challenge, any error was harmless. Gregory has not proven any statutory or constitutional violations by the Parole Board, let alone "extraordinary dereliction" which would entitle Gregory to outright release from his sentence. Even had the Parole Board dismissed the original parole violation charges, Gregory would have been subsequently revoked upon receipt of a certified copy of his

25

conviction for the crime of Breaking and Entering, which he committed while out on parole. Gregory has served over 13 years in prison since his parole was revoked primarily because he (1) committed first degree murder, (2) performed poorly while out on parole, (3) continued to commit numerous disciplinary rule infractions upon his return to prison and (4) shown little, if any, cooperation or respect for the Parole Board.

Finally, the petitioner argues the all disciplinary actions against him are void in that all disciplinary actions against him were pursuant to unlawfully promulgated disciplinary rules. On November 10, 1997, Gregory filed a Petition for Writ of Habeas Corpus Ad Subjiciendum in the Kanawha County Circuit Court presiding Judge James Stucky. In this Petition, Gregory asserted as grounds for relief that: (1) the Division of Corrections had repeatedly failed to file a copy of its disciplinary rules in the State register; and (2) the Division of Corrections did not publish separate rules for each adult correctional facility.[1] Judge Stucky found as a matter of law that the allegations of Gregory did not state a cause of action and dismissed Gregory's petition on the merits. This was a full and fair hearing on the merits and the principles of res judicata (except that he now includes disciplinary proceedings from November 10, 1997 to the present as well) and issue preclusion require dismissal of this issue. This part of Gregory's petition is also an action concerning "conditions of imprisonment" under the West Virginia Prisoner Litigation Reform Act. This Act requires that if the

---

[1] In his Statement of Facts, Gregory states "[a]ccording to the Administrative Law Division of the Office of Secretary State of the State of West Virginia, the respondent has filed only one copy of his rules of disciplinary procedure in the state register. Exhibit C" and "[t]he respondent has not promulgated any separate rules of disciplinary procedure for the West Virginia Penitentiary or the Mount Olive Correctional Complex."
In his Argument, Gregory states "[s]till, over the years the respondent has repeatedly failed to file copy of his disciplinary rules in the state register. As a matter-of-fact, according to the Office of the Secretary of State there is only one copy of the respondents' disciplinary rules on file in the state register; and they were not filed until 1996. See, Exhibit C...And even these rules are wholly deficient. First, the rules are directed to all adult correctional facilities, not separately for the penitentiary or Mount Olive Correctional Complex as mandated by W. Va. Code §§ 28-5-2 and 28-5-27(f), as is easily noted by simply looking upon page 1 of Exhibit D. The pure fact of the matter is the respondent, between April 7, 1976, and approximately April 11, 1996, did not file certified copy of his disciplinary rules in the state register and, from the enactment of W. Va. Code § 28-5-27(f) in 1984, the respondent has not promulgated. disciplinary [sic] in compliance with that statute's mandates."

26

complaint is frivolous or malicious "the court shall not issue process and shall dismiss the case." W. Va. Code § 25-1A-4(a). The Act then states:

(b) A civil action is frivolous or malicious if it:

(2) Is substantially similar to a previous civil action in which the inmate did not substantially prevail, either in that it is brought against the same parties or in that the civil action arises from the same operative facts of a previous civil action. . . .
W. Va. Code § 25-1A-4 (in part)

Here, Gregory asserts the same operative facts and issues as he did in his previous Petition for Habeas Corpus in front of Judge Stucky and was dismissed. Where an agency has specific expertise in an area, to-wit: prison discipline, the Court will defer to the agency's reasonable interpretation of a statute it is empowered to administer. See Appalachian Power Co., supra. This Court finds it reasonable that the Division of Corrections might treat all adult inmates in its facilities equally. Even assuming that West Virginia Code, § 28-5-27(f) means that, even though the rules are the same, the Division of Corrections must title each copy of Policy Directive 325.00 with the particular institution to which it will be provided, such an error is de minimis and nonprejudicial.

## DECISION

WHEREFORE, for the above reasons, this Court DENIES the Petition for Writ of Habeas Corpus. Further, in compliance with this Order the Parole Board shall grant Mr. Gregory *a full hearing within forty-five days* notwithstanding any recent violation of prison rules and upon its decision render *complete findings of fact* according to its decision. Also, Mr. Gregory is still entitled to his parole hearing in July. This matter is dismissed and stricken from the docket and the Circuit Clerk shall distribute certified copies of this Order to counsel of record: ℒ Dismissed.

John H. Boothroyd
Assistant Attorney General
112 California Ave

27

29

Charleston, West Virginia 25305

Alvin L. Gregory
DOC #10086
1 Mountainside Way, Box 5
Mt. Olive, West Virginia 25185

Enter this Order the 28th day of _January_, 2005

Tod J. Kaufman,

Judge

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

28